, [No. 13601. In Bank. — March 6, 1891.]

# ELLE ELLEN, BY HIS GUARDIAN, PATRICK HENRY, RESPONDENT, v. J. L. LEWISON ET AL., ADMINIS-TRATORS, ETC., APPELLANTS.

TRIAL— AMENDMENT OF COMPLAINT— TIME TO ANSWER— DISCRETION. — Where the complaint is amended upon the trial, by the addition of a few lines, to obviate an objection to the admission of evidence upon a point which the pleader had evidently intended to make by the original complaint, it is not an abuse of discretion to require the defendant to answer the amendment immediately, if the answer could be easily made at once without inconvenience to the defendant.

SETTING ASIDE GIFT — FRAUD — UNDUE INFLUENCE — MENTAL INCOM-PETENCY — PLEADING — AMENDMENT — CONTINUANCE — SURPRISE. — Where it is clear, from the inspection of the complaint in an action to set aside a gift of a father to his daughter, that the pleader intended to charge not only that the giver was mentally incompetent to make the gift, but also that he was induced to make it by the fraudulent acts and undue influence of his daughter, it is not error to refuse a continuance on the ground of surprise at an amendment allowed by the court at the trial, out of abundant caution, so as to charge more specifically that the gift was so induced.

ID. — EVIDENCE— REBUTTAL OF— FALSE REPRESENTATION— ACCUSATION OF THEFT. — Evidence that the donor was in the habit of keeping large sums of money in his house, and that a witness had helped him to carry there a large sum of money, is not admissible in rebuttal of evidence that the donee had represented to her father that her sister's husband had come to her father's house after he was stricken with paralysis and had stolen a large sum of money, if it does not appear at what definite time it would be shown that the money was kept in or carried to the house.

ID. — WEIGHT OF MONEY CARRIED AWAY. — Where the sister's husband, accused of theft, has testified in behalf of the plaintiff that he had taken away from the house of the donor of the gift in controversy a small sum of money in a hand-satchel, and certain books and papers in a large satchel, by the order of the donor, after he had been stricken with paralysis, and that he had accounted for all funds and credits so received, and another witness has stated in behalf of the defendants, without objection, that he saw him carrying away two large valises about eighteen inches in length and a foot in diameter, and that they appeared to be very heavy, it is not prejudicial error to refuse to allow the witness to state that he was weighed down by two large satchels which appeared to weigh seventy-five pounds each.

ID. — BELIEF OF DONOR AS TO THEFT— IMMATERIAL EVIDENCE. — Evidence as to the belief of the donor that a theft had been committed by the husband of another daughter, as represented by the daughter who received the gift, and that he was angry with the person accused of the theft, and

had accused him thereof in the presence of others, is immaterial, in the absence of evidence to show that his belief and anger had proceeded from some cause independent of the representations of the daughter who obtained the gift.

ID. — MENTAL INCOMPETENCY — OBJECTIONABLE QUESTION — ANSWER WITHOUT PREJUDICE. — Where the answers of a witness to an objectionable question of the plaintiff's counsel upon the subject of the mental incompetency of the donor of the gift tends to negative the theory of the plaintiff's counsel upon that subject, the jury cannot be misled by the objectionable question.

ID. — VOLUNTARY ACT OF DONOR — DELIVERY OF CHECK. — After a witness for the defendants has stated that the mental condition of the donor of the gift was sound at the time of the gift, that he saw the check for the money signed and delivered, and that the donor then stated his reasons for making the gift, the judgment against the defendants will not be reversed because the witness was not allowed to say that the donor delivered the check as his own voluntary act.

APPEAL from a judgment of the Superior Court of Nevada County.

The main facts are stated in the opinion of the court. It appeared that the plaintiff, Elle Ellen, was prostrated by a stroke of paralysis in April, 1886, after which he was taken to San Francisco for treatment. Joseph Sanders testified that he talked rationally sometimes, and had sent his wife and himself to Truckee to get the money in the safe, about five thousand dollars, and the papers; that he had the money in a hand-satchel, and the books and papers in a large satchel, to which no particular weight was attached; that they looked for money in the cellar, where Ellen said some money was buried, but found none; and that he afterwards accounted to Ellen's manager for all money realized. The question put to the witness Kruger, referred to in the opinion, was, "If he [Ellen] labored under the hallucination that he had acquired three sections of land, and had not acquired it, don't you think that is an indication that he did not know the condition of his business affairs?" It was objected to this question that it assumed facts not in evidence; and it appears that no evidence was adduced during the trial to prove the exist-

ence of such hallucination as matter of fact, except as set forth in the answer of the witness. The witness answered that his business manager might have made such a representation to him, and that he (Ellen) might have been deceived. All other facts important to be considered are stated in the opinion of the court.

*Fred Searls*, and *H. L. Gear*, for Appellants.

The court erred in ruling defendants to an immediate answer to plaintiff's amendment. (Code Civ. Proc., sec. 432; *Story* v. *District of Columbia*, 3 McAr. 503; *Union Bank* v. *Mott*, 19 How. Pr. 267; *Harriott* v. *Wells*, 9 Bosw. 633, 635.) The court erred in refusing the continuance upon the showing made. (*Polk* v. *Coffin*, 9 Cal. 58; *Alexander* v. *Byron*, 2 Johns. Cas. 319; *Turner* v. *Morrison*, 11 Cal. 22; *Cowell* v. *Marks*, 1 Scam. 525; *Illinois M. F. Ins. Co.* v. *Marcilles M. Co.*, 1 Gilm. 236; *Turnstall* v. *Hamilton*, 8 Mo. 500; *Wyatt* v. *Harden*, Hemp. 17; *Kirkpatrick* v. *Holman*, 25 Ind. 293; *Jennings* v. *Sheldon*, 53 Mich. 431.) A continuance should be granted upon an affidavit of surprise occasioned by a substantial amendment allowed at time of trial. (*Cowan* v. *Williams*, 49 Tex. 397; *Strong* v. *District of Columbia*, 3 McAr. 499; *Phillips* v. *City of Atlanta*, 78 Ga. 773; *Grimes* v. *Watkins*, 59 Tex. 137, 138; *Cunningham* v. *State*, 12 S. W. Rep. 217; *Fowlks* v. *Long*, 4 Humph. 511; *Danley* v. *Scanlon*, 116 Ind. 8; *Conway* v. *Mayor etc.*, 4 Daly, 309; *Miller* v. *Metzger*, 16 Ill. 390; *McCausland* v. *Ralston*, 12 Nev. 202, 203.

*Thomas S. Ford*, for Respondent.

The court had discretion to permit the amendment to conform the pleading to the proofs. (*Farmers' Nat. Bank* v. *Stover*, 60 Cal. 395; *Hooper* v. *Wells*, 27 Cal. 35; 85 Am. Dec. 211; *Conalley* v. *Peck*, 3 Cal. 75; *Graham* v. *Stewart*, 68 Cal. 374; *Kirstein* v. *Madden*, 38 Cal. 158; *Stringer* v. *Davis*, 30 Cal. 318; *Pearson* v. *McCahill*, 22 Cal. 127; *Peters*

v. *Foss*, 16 Cal. 357; *Lestrade* v. *Barth*, 19 Cal. 660.) It was a matter of discretion which will only be reviewed when the discretion is grossly abused. The court allowed a reasonable time, and what constitutes a reasonable time is a question of fact. The character of the answer to the amendment shows that any attorney could have drawn it in five minutes. The variance could not mislead, and was not material. (Code Civ. Proc., secs. 469, 475.) It was not an abuse of discretion to refuse the continuance. (*People* v. *Mortimer*, 46 Cal. 115; *Griffin* v. *Polhemus*, 20 Cal. 181; *Linden* v. *Case*, 46 Cal. 171; *People* v. *De Lacey*, 28 Cal. 590; *Kern Valley Bank* v. *Chester*, 55 Cal. 49; *People* v. *Gaunt*, 23 Cal. 157; *Harper* v. *Lamping*, 33 Cal. 641; *Carey* v. *Phil. & Cal. P. Co.*, 33 Cal. 694; *Wilkinson* v. *Parrott*, 32 Cal. 102; *Chatfield* v. *Williams*, 85 Cal. 518.) Where there is great mental weakness, age, or sickness, and other circumstances tend to show an unfair advantage taken, the undue influence will be inferred by the court. (*Moore* v. *Moore*, 56 Cal. 89; *Taylor* v. *Taylor*, 8 How. 183; *Bergen* v. *Udall*, 31 Barb. 9; *Harding* v. *Wheaton*, 2 Mason, 378; *Harding* v. *Handy*, 11 Wheat. 125; Civ. Code, sec. 1575; Story's Eq. Jur., sec. 248; *Todd* v. *Grove*, 33 Md. 188; *Martin* v. *Martin*, 1 Heisk. 644; *Allore* v. *Jewell*, 94 U. S. 506.) Whether Ellen believed Sanders had robbed him or not is immaterial to a proper decision of the merits of the case.

The COURT. — This action was brought by the plaintiff against the defendants as the administrators of the estate of Emma J. Regli, deceased. The plaintiff obtained a verdict and judgment against the defendants in their representative capacity as prayed for, and from that judgment this appeal is taken, on the judgment roll and a bill of exceptions.

The facts set up in the complaint were, in brief, that Elle Ellen, an incompetent person, who sues by his guardian, had been induced by his daughter, Mrs. Regli,

to make her a gift of $15,850, which gift, "by reason of the premises, is utterly void, and the conversion of the said money was wrongful and without consideration."

The grounds which the plaintiff claims that he relied on to sustain his contention are, that the gift was made by an incompetent person while being unduly influenced.

Upon the trial, when evidence was sought to be introcuced as to the fraud and undue influence claimed to have been exercised by Mrs. Regli in her life-time, and to have induced the gift, the defendants objected that such evidence was inadmissible under the pleadings, that no such issue was tendered by the complaint, and that the only issue tendered was "that of mental competency to make the alleged gift." The court agreed with the defendants, and allowed the plaintiff at once to amend the complaint, which was done in a few lines.

Counsel for defendants insisted on being allowed ten days in which to answer, but did not ask for any less number of days. The court ruled them to an immediate answer, which was made at once, and briefly, though sufficiently; and as appears to us, this was easily done, and without any inconvenience. Whereupon they moved for a continuance on an affidavit alleging surprise, and that they must now adopt a different line of defense by reason of the amendment, and stated that they expected to be able to obtain proof upon " all of said new issues now tendered which is not now at their command," and that they needed further time, etc. The court refused to grant the continuance, and the trial proceeded, against the objection of the defendants. It is claimed that the court below was guilty of an abuse of discretion in not allowing time to file the answer to the amendment, and in refusing to grant a continuance.

As to the first matter, it is plain that the amendment was easily made and filed as requested, and there certainly was no abuse of discretion in requiring this to be done.

As to the other point, it is clear to us, from an inspection of the complaint, that it was the intention of the pleader to charge both that the gift was made when Elle Ellen was incompetent to make it, and also that he was induced to make it by the fraudulent acts and undue influence of Mrs. Regli. It is true that the pleading is not to be commended as a model in this respect, but we think it was sufficient. Out of abundant caution apparently, the trial judge had the complaint amended and answered, but he was evidently of the opinion that there was no surprise sprung upon the defendants, and we agree with him.

It is further assigned for error that the court erred in refusing to allow the witness Schaffer to testify that Ellen, since the year 1868, and before his stroke of paralysis, was in the habit of keeping large sums of money in his house, and that the witness helped Ellen to carry fifteen thousand dollars there. The purpose of this, we suppose, was to show that when Mrs. Regli, as testified to by Graham, had, in the fall of 1886, upbraided her father with having willed his property to her sister, and that her sister's husband had come up to the father's place, after his attack of paralysis in the spring of that year, opened his safe, and carried "down his papers and money, and they had stolen twenty-one thousand dollars," she was speaking the truth, and that Joseph Sanders, the husband of her sister, had in his account of the matter sworn falsely.

The evidence on this head sought to be elicited, just alluded to, as well as that the witness had helped "Mr. Ellen to carry fifteen thousand dollars over to his house, in gold coin," was not admissible, for the reason, if no other, that it does not appear at what definite time it would be shown that such money was kept or carried to Ellen's house. It might have been, for all that the evidence would have shown to the contrary, many years before the time when Sanders had gone to Ellen's house

and taken away the money as he is claimed to have done. It might have been in the year 1869, and Sanders took what money he carried to San Francisco in 1886.

It is further objected that the witness was not allowed to state in contradiction of Sanders's statement (that he had taken away only about $5,080.50 in coin from Ellen's safe in 1886, and that he had the money in a hand-satchel and the books and papers in a large satchel), "that Sanders was weighed down by two large satchels, which appeared to weigh seventy-five pounds each." The witness had just stated, without objection, that "when Sanders went to San Francisco, he had two big valises about eighteen inches in length and a foot in diameter, and they appeared to be very heavy." This was substantially what it was proposed he should again testify to, with a guess as to the weight of the satchels added. We do not think the action of the court resulted in prejudicial error.

It was proposed, with a view to lay a foundation for Sanders's impeachment, to ask him whether, in the month of July, 1887, in the presence of various parties, Mr. Ellen had not used language to him indicating that Ellen believed Sanders and his wife had taken the money of the former. We suppose that if the witness had declared, as was evidently expected, that such had not been the case, the defendants would have introduced evidence to show that Ellen was angry with Sanders and wife, and that the cause of this anger was his belief that they had stolen his money.

Admitting that the question had been answered by Sanders in the affirmative, or that if he had not so answered the defendants could have shown, as they proposed, that Ellen was angry at Sanders and wife, and because he believed they had stolen from him, still, the evidence could not have aided the defendants. There was nothing in it, or the record, which tended to show that Ellen had any belief as against the honesty of Sanders and wife, or anger at them on that account, except

as derived from the statement of Mrs. Regli to him that they had stolen money from him.

It was already proved that he was angry with them on that account, and further proof of the existence of such anger or bias would not have helped the defendants, unless there was something to show that it had proceeded from some cause independent of Mrs. Regli's statements to him. So that if the evidence was admissible, it was immaterial.

Admitting that the question put to Kruger at folio 83 was objectionable, yet the answers of the witness in reference to that and other questions on that line did not tend to support, but rather to negative, the counsel's theory of the plaintiff's mental incompetency, and no harm was done, nor do we think there was any misleading of the jury by the court allowing the question to be put.

McGlashan, a witness for defendants, who had testified to the check given by Ellen to Mrs. Regli, was asked this question, "Did he deliver that as his own voluntary act?" and an objection by plaintiff was sustained. Defendants then offered to prove by the witness that the check was signed and delivered voluntarily, and an objection to the offer was sustained. These rulings are assigned as reversible error. The objections were, that the witness was an attorney for Ellen at that time, and for that reason should not be allowed to testify; and that the testimony sought was mere expression of opinion about a matter which was for the determination of the jury, and was irrelevant, immaterial, etc. We doubt whether the question was admissible as a strict question of law. Certainly neither *People* v. *Sanford*, 43 Cal. 29, nor *People* v. *Monteith*, 73 Cal. 7, relied on by appellants, is closely in point. In the former case, it was merely held proper for a witness to testify to the condition of the mind of a person at the time he made a dying declaration; that is, "whether it was clear or confused";

and in the latter case, where there was a question as to the intoxication of the defendant, it was merely held proper for a witness to testify "what *appeared* to be his condition as to sobriety." But in the case at bar it was sought to prove, by the opinion of the witness, what the *motive* was which induced the third party to do a certain act; that is, whether he did the act "voluntarily." Such evidence might be admissible under peculiar circumstances; but we doubt if it was admissible in the case at bar. But if it be admitted that the court erred on this point, the error was not of sufficient importance to work a reversal of the judgment. When a case like this one has been, upon the whole, fairly submitted to a jury, a mere abstract error doing no injury will be disregarded. The witness McGlashan had testified very fully to the condition of Ellen's mind at the time the check was given. He had said "that his mental condition was as sound as he ever knew him to be, as he had every opportunity of testing it; that he talked very intelligently on business matters; that he was present when the check was given to Emma Regli, about the 25th of March; that Ellen signed the check in his presence, and *stated his reasons* for making the gift, and he saw the check delivered to Mrs. Regli by Mr. Ellen; that others were present at the time, and that he, himself, drew the body of the check at Mr. Ellen's request," and (testified) to all circumstances that occurred at the time. Now, this testimony was just as clearly to the point, and must have been so understood by the jury, that, in the opinion of the witness, the check was signed and delivered voluntarily, as if the word " voluntary," or " voluntarily," had been expressly used by the witness; and it would be an unjust thing to reverse the case because the witness was not allowed afterwards to add the word " voluntary." It is quite clear that no substantial injury was done by the ruling of the court on this point.

The judgment is affirmed.